OPINION
Defendant-appellant, Connie M. Moore, appeals the property division granted by the Brown County Court, Domestic Relations Division, in the divorce action filed by her husband, Charles R. Moore. We affirm the trial court's judgment.
Connie and Charles were married on September 4, 1992, and the marriage lasted approximately six years. At the time of the marriage, Connie had few assets except some furniture and personal effects. Charles, however, had substantial assets, including a farm and large amounts of money invested in bank certificates of deposit, other investments, and another bank account. During the marriage, Connie's income working in a nursing home and as a certified day-care provider was approximately $10,000 to $12,000 per year, while Charles' income, which resulted from his pension and social security benefits, was approximately $13,000 per year. At the time of the divorce hearing, Charles' income was approximately $16,000 per year.
In 1994, Charles and Connie built the marital residence on Mt. Airy Road in Russellville, Ohio. Charles titled the survivorship deed to the real estate and the home in the names of both himself and Connie. Charles purchased the real estate on which the house was built and all of the building materials used to build the home with money he had saved in his own accounts before the marriage. Charles and a friend contributed substantial labor to build the residence themselves. Connie made a minimal contribution to building the home. In all, Charles expended $46,818.58 to buy the property and to build the home. At the time of the parties' divorce hearing on June 8, 1999, the home's value was approximately $63,000.
Before his marriage to Connie, Charles owned a farm in Ripley, Ohio. During his marriage, Charles bought several parcels of real estate and two mobile homes. For $5,000, Charles bought a second lot on Mt. Airy Road adjacent to the lot on which he had built the marital residence. Charles had purchased the Mt. Airy Road real estate, which he titled in the names of both himself and Connie with survivorship rights, using money he had before marrying Connie.
Charles also purchased three lots in Byrd Township, Ohio, using money that he possessed before his marriage to Connie. Again, Charles titled the deeds for the real estate in both his own and Connie's names with the right of survivorship. Charles titled only one of the two mobile homes he bought for the property in both parties' names; he titled the second mobile home in his own name. During the marriage, Connie managed the rental income from the mobile homes, paying the utilities and returning the remaining money to Charles. Connie did not, however, make improvements to the mobile homes or the land, and she did not contribute to their upkeep.
Charles also bought eight lots in Jefferson Township, Ohio, during the marriage. Although Charles titled the deeds to the lots in both parties' names with the right of survivorship, he purchased the lots with money he possessed before their marriage. Connie had made no improvements to this real estate during the marriage.
Charles filed a complaint for divorce from Connie on May 19, 1998. A magistrate heard evidence in the final divorce hearing on June 8, 1999, and issued a decision dividing the parties' assets on July 16, 1999. In that decision, the magistrate found that Connie and Charles jointly owned the marital residence, but that Charles had satisfactorily traced the money he had used toward the purchase of the real estate and building materials to his own pre-marital assets. Accordingly, Connie was entitled to receive $8,090.71, an amount equal to one-half of the home's $16,181.42 appreciation during the marriage.
The magistrate also determined that Charles had adequately traced the money with which he had purchased the remaining parcels of real estate and the mobile homes to his pre-marital assets. Although that property had been titled jointly in the names of both Charles and Connie, the magistrate determined that Connie was not entitled to receive payment for her interest in any of these assets because the transfer of property into her name had not changed Charles' separate property interest in the assets.
The magistrate also assessed Connie's need for spousal support. In an interim order, the court had granted Connie temporary spousal support in the form of rent from Charles' mobile homes. However, the magistrate found that Connie was entitled to no additional spousal support in excess of the temporary support she had already received because the marriage had endured for only six years, and during that time Charles had given Connie an allowance and paid her debts.
Although Connie objected to the magistrate's determinations, the trial court denied the objections and adopted the terms of the property division and the spousal support determination. Connie now appeals the trial court's determination.
Assignment of Error No. 1:
 THE TRIAL COURT ERRED IN DIVIDING THE PROPERTY BETWEEN THE PARTIES AND SUCH ERROR WAS AN ABUSE OF DISCRETION.
 Connie first claims that the magistrate erred by failing to find that Charles transmuted his separate property into marital property. She cites Charles' actions titling both the real estate and the marital residence in both parties' names using survivorship deeds. Charles responds that he adequately traced the money with which the real estate and the residence were purchased to his own pre-marital property so that the property remained his separate property. Connie next claims that Charles likewise transmuted the additional parcels of real estate and the mobile homes into marital property in similar fashion. Charles does not specifically respond to this argument, but relies upon the magistrate's discretion to divide property in a divorce action.
In a divorce proceeding, the trial court must first determine what constitutes marital property and what constitutes separate property. R.C. 3105.171(B). Once the trial court has determined the status of the parties' property, the court must generally disburse a spouse's separate property to that spouse and equitably distribute the marital estate. R.C. 3105.171(B) and (D).
We review the trial court's classification of property as marital or separate under a manifest weight of the evidence standard. Fite v. Fite
(Apr. 24, 2000), Brown App. No. CA99-07-022, unreported, at 5. Under the manifest weight of the evidence standard, the factual findings of the trial court concerning the classification of property as marital or separate are reviewed to determine whether they are supported by competent, credible evidence. Id. Since the trial court is vested with broad discretion in establishing an equitable division of marital property, the findings of a trial court will be upheld where the record contains some competent evidence to support those findings. Fletcher v.Fletcher (1994), 68 Ohio St.3d 464, 468; Donovan v. Donovan (1996),110 Ohio App.3d 615, 620. Accordingly, when reviewing a trial court's decision in a domestic relations case, the abuse of discretion standard applies. Allen v. Allen (1996), 109 Ohio App.3d 640, 641-42. The term "abuse of discretion" suggests more than an error of law or judgment and indicates that the trial court's decision is unreasonable, arbitrary, or unconscionable. Id. Absent an abuse of discretion, the trial court's judgment cannot be disturbed on appeal. Id.
Connie claims that Charles transmuted the separate assets he used to build their residence into marital assets. "Transmutation" is the act or acts of one party, the original owner, converting separate property into marital property. Kuehn v. Kuehn (1988), 55 Ohio App.3d 245. Under this doctrine, the trial court, within its sound discretion, can consider multiple factors when assessing an alleged transmutation of property.Id. With the enactment of R.C. 3105.171, however, the concept of "transmutation" of separate property to marital property was "virtually abolished as a rule of law in Ohio." Stern v. Stern (Aug. 12, 1996), Clinton App. No. CA96-01-001, unreported, at 4, quoting Baldwin Ohio Domestic Relations Law (1991 ed.) 278, Section 12.04.
R.C. 3105.171(A)(6)(b) now provides that the commingling of separate and marital property does not destroy the character of the separate property. Peck v. Peck (1994), 96 Ohio App.3d 731, 734. The determinative issue is whether one spouse's separate property has lost its separate character after being commingled with the couple's marital property or whether the property remains traceable as separate property. See Stern at 4.
Here, the magistrate traced the funds Charles had used to purchase the real estate and build the home to his separate, pre-marital property. Connie claims that Charles' actions placing her name on the purchase documents and the deed and building a joint residence constituted transmutation. However, it is important to note that the holding of title to property by one spouse individually, or by both spouses in a form of co-ownership, does not in and of itself determine whether the property is marital or separate. Fite, Brown App. No. CA99-07-022, unreported, at 10, citing R.C. 3105.171(H). When equity in the marital home is contributed by one spouse and that equity can be traced to his pre-marital funds, those funds remain the spouse's separate property.Fite at 10; see, also, Schneider v. Schneider (Mar. 29, 1999), Brown App. Nos. CA98-03-007 and CA98-03-009, unreported, at 3-4.
Since Charles traced the money he used to purchase the real estate and build the marital residence, the money remained his separate asset and there is no transmutation. We find that the magistrate correctly found that $46,818.58 of the home's $63,000 constituted Charles' separate pre-marital property. The trial court did not abuse its discretion by adopting this finding. Likewise, the magistrate found that Charles adequately traced the money he had used to purchase the additional real estate and the mobile homes to his separate pre-marital assets.
Despite Connie's contentions, the fact that Charles placed title to the properties in both of their names with survivorship rights did not transmute its separate character since the magistrate could trace the property to Charles' pre-marital assets. See Fite, Brown App. No. CA99-07-022, unreported, at 9-10. The magistrate correctly applied R.C.3105.171(A)(6)(b) and found that all of the property belonged to Charles alone, and the trial court properly adopted this finding. Connie's first assignment of error is overruled.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED IN FAILING TO AWARD APPELLANT SPOUSAL SUPPORT.
 Connie argues that the magistrate erroneously failed to award her spousal support in excess of the temporary support she had received in the form of rent from Charles' mobile homes. She claims that the magistrate failed to consider that the property division, which divested her of the marital home and Charles' mobile homes, precluded her only means by which to make a living. Charles responds that no evidence before the magistrate showed that Connie's only means of support was precluded, and even if support had been ordered, Connie's "bigamist re-marriage" rendered any issue regarding spousal support "moot."
Initially, we note that Charles' claim that Connie entered into a "bigamist marriage" is unsupported by any evidence presented to the trial court. Even had such evidence been presented to the court, Connie's alleged void re-marriage cannot render the issue regarding spousal support "moot." A second, bigamist marriage is void ab initio. SeeChristopher v. Christopher (C.P. 1950), 56 Ohio Law Abs. 449. Accordingly, Connie's later void marriage, from which no property or support rights arose, would have no impact upon her right to property and spousal support derived from her prior valid marriage to Charles.
Nonetheless, we find the magistrate's order denying Connie additional spousal support legally sound. R.C. 3105.18(B) permits a court to award reasonable spousal support, while R.C. 3105.18(C) lists numerous factors controlling the determination of spousal support. An award of spousal support made after a court considers the factors in R.C. 3105.18(C) is discretionary and will be reversed on appeal only for an abuse of discretion. Blakemore v. Blakemore (1993), 5 Ohio St.3d 217, 218-19.
Under R.C. 3105.18(C)(1)(a) and (b), the trial court is required to consider the income and relative earning abilities of the parties.Carnahan v. Carnahan (1997), 118 Ohio App.3d 393, 401. At the final divorce hearing, Connie testified that she intended to continue providing care to at least three children so that she could earn approximately $500 to $600 per month. Yet, Connie complains on appeal that she has no income because she could not continue to provide day care to children once both the residence and the mobile homes were awarded to Charles in the court's property division.
Connie presented no evidence that her income would decrease if the property was awarded to Charles, although she could have done so. When the court considered Connie's income for purposes of its spousal support award, it could consider only the evidence it had before it. The magistrate could not consider any effect that the property division might have on Connie's income when no such evidence was presented to the court.
The magistrate found that Connie was not entitled to spousal support from Charles. We cannot find that the trial court abused its discretion by adopting this finding. Connie's second assignment of error is overruled.
POWELL, P.J., and WALSH, J., concur.
 ____________ VALEN, J.